**Darryl KANE, Individually and on Behalf of Nexus Professional Associates, Inc., Appellants**

v.

**Michael A. VIGUNAS, Laura Douglas and Max International Converters, Inc., Jerry Shenk and D & E Communications, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 17, 2008.

Filed Feb. 13, 2009.

Reargument Denied April 16, 2009.

Matthew L. Honsher, Lancaster, for Kane, appellant.

George C. Werner, Jr., Lancaster, for Shenk and D&E, appellees.

Susan P. Peipher, Lancaster, for Vigunas, Douglas and Max, appellees.

BEFORE: PANELLA, CLELAND, JJ., and McEWEN, P.J.E.

OPINION BY McEWEN, P.J.E.

¶ 1 Appellant, Darryl Kane, individually and on behalf of Nexus Professional Associates, Inc., appeals from the order that refused to reinstate a civil action that had been terminated on grounds of inactivity. We are compelled to reverse and remand this case for further proceedings.

¶ 2 The fundamental facts underlying this appeal are not disputed. Appellant, plaintiff below, initiated a civil action in the Court of Common Pleas of Lancaster County by filing a *praecipe* for a writ of summons in December of 2002. Appellant subsequently filed a complaint in March of 2003. Thereafter, the following pleadings were filed: preliminary objections and responses thereto, amended complaints, answers and new matter, and replies to new matter with cross claims. The pleadings were closed on May 6, 2004. In the ensuing months the parties engaged in some discovery, but no further docket activity took place. As a consequence, on May 12, 2006, more than two years after the last docket entry, the Prothonotary for the Court of Common Pleas of Lancaster County, pursuant to Pa.R.C.P. 230.2, issued a notice of intent to terminate an inactive case. Significantly, the notice of intent to terminate was not placed in the United States mail, but was, instead, placed into a mail slot designated for appellant's counsel that was located in the Prothonotary's office.[1] Thereafter, no further docket activity occurred. As a result, on August 16, 2006, the case was terminated by the Prothonotary on grounds of inactivity, and, at some undetermined point after August 16, 2006, notice of the termination of civil action was also placed in plaintiff's counsel's court house "mail" slot.[2]

¶ 3 Counsel for appellant, in January of 2007, discovered that the action had been terminated when he contacted counsel for appellees in an attempt to schedule a deposition.[3] Consequently, on January 11, 2007, counsel for appellant filed a petition to reinstate the cause of action, in which he argued, *inter alia*, that he had never received either the notice of the court's intent to terminate, or the order of termination. Appellees objected, and the trial court thereafter entertained written and oral arguments of the parties. When the trial court denied the petition to reinstate the action, this appeal followed.

¶ 4 Appellant, in the brief filed in support of this appeal, sets out the following questions for our review, which we have rephrased in the interest of clarity:

Whether the trial court erred or abused its discretion when it ruled that the Prothonotary properly served the notice of intent to terminate appellant's civil action in accordance with Pa.R.C.P. 230.2?

Whether the trial court erred or abused its discretion when it failed to find that there was sufficient activity on the rec-

---

1. Defense counsel was similarly served.

2. We note that counsel for appellant acknowledges that he had previously signed a notice authorizing the Prothonotary to utilize court house mail as a means of notifying him of court related matters.

3. According to his petition to reinstate the action, counsel, up to that point, had not received either of the termination related notices.

ord to preclude dismissal under Pa. R.C.P. 230.2(a)?

*See:* Brief of Appellant, p. 4.

¶ 5 Our review of the decision of the trial court to deny a petition to reinstate a terminated case is limited to determining whether the trial court abused its discretion or committed an error of law. *See: Samaras v. Hartwick,* 698 A.2d 71, 72 (Pa.Super.1997).

¶ 6 Rule 230.2 of the Pennsylvania Rules of Civil Procedure provides in relevant part:

### Rule 230.2. Termination of Inactive Cases

(a) The court may initiate proceedings to terminate a case in which there has been no activity of record for two years or more by serving a notice of proposed dismissal of court case.

(b) (1) The court shall serve the notice on counsel of record, and on the parties if not represented, sixty days prior to the date of the proposed termination. The notice shall contain the date of the proposed termination and the procedure to avoid termination.

(2) The notice shall be served by mail pursuant to Rule 440.[4] If the mailed notice is returned, the notice shall be served by advertising it in the legal publication, if any, designated by the court for the publication of legal notices or in one newspaper of general circulation within the county.

(c) If no statement of intention to proceed has been filed, the prothonotary shall enter an order as of course terminating the matter with prejudice for failure to prosecute.[5]

(d) (1) If an action has been terminated pursuant to this rule, an aggrieved party may petition the court to reinstate the action.

(2) If the petition is filed within thirty days after the entry of the order of termination on the docket, the court shall grant the petition and reinstate the action.

(3) If the petition is filed more than thirty days after the entry of the order of termination on the docket, the court shall grant the petition and reinstate the action upon a showing that

(i) the petition was timely filed following the entry of the order for termination and

4. Pennsylvania Rule of Civil Procedure 440 provides in relevant part:

**Rule 440. Service of Legal Papers other than Original Process**

(a) (1) Copies of all legal papers other than original process filed in an action or served upon any party to an action shall be served upon every other party to the action. Service shall be made

(i) by handing or mailing a copy to or leaving a copy for each party at the address of the party's attorney of record endorsed on an appearance or prior pleading of the party, or at such other address as a party may agree[.]

Pa.R.C.P. 440(a). The notes published in conjunction with this Rule provide, *inter alia,* that "[s]uch other address as a party may agree *might* include a mailbox in the prothonotary's office or an e-mail address," and that "[t]his rule . . . includes, but is not limited to, all other pleadings as well as motions, petitions, answers thereto, rules, notices, interrogatories and answers thereto." *Notes to* Pa.R.C.P. 440 (emphasis supplied).

5. It bears observation that, unlike subsection (b)(2) of Rule 230.2, subsection (c) does not describe the manner in which this ultimate notice of termination shall be served. Thus, pursuant to the principle of construing Rules *in pari materia,* it is logical to conclude that this notice was intended to be served in accordance with Pa.R.C.P. 236. However, the docket of the Court of Common Pleas of Lancaster County does not evidence compliance with Rule 236.

(ii) there is a reasonable explanation or a legitimate excuse for the failure to file both

(A) the statement of intention to proceed prior to the entry of the order of termination on the docket and,

(B) the petition to reinstate the action within thirty days after the entry of the order of termination on the docket.

Pa.R.C.P. 230.2.

¶ 7 It is essential to recognize, at the outset of a discussion of the proper means of terminating inactive civil actions, that Rule 230.2 "was promulgated in response of the decision of the [Pennsylvania] Supreme Court in *Shope v. Eagle*, 551 Pa. 360, 710 A.2d 1104 (1998)," wherein that Court held that before a case could be terminated as a matter of judicial administration, a showing of "prejudice to the defendant as a result of delay in prosecution is required." *See:* Pa.R.C.P. 230.2, Explanatory Comment–2003. *See also: Shope v. Eagle, supra,* 551 Pa. at 367, 710 A.2d at 1108. Thus, the history preceding enactment of the Rule suggests that the Supreme Court does not favor the termination of otherwise viable cases based on the mere lack of docket activity. *See generally: Florig v. Estate of O'Hara,* 912 A.2d 318 (Pa.Super.2006), *appeal denied,* 593 Pa. 740, 929 A.2d 1162 (2007) (lack of docket activity for six years did not preclude opening of judgment of *non pros* in light of intervening settlement negotiations.). It also bears emphasis that Rule 230.2 requires two separate notices, but only specifies the method of service of the first step in the termination process, namely, the notice of intent to terminate. *See:* Footnote 5, *supra.* With these considerations in mind, we will examine the events giving rise to this appeal.

¶ 8 The parties' respective interpretations of Rule 230.2 as it relates to the notice of intent to terminate a civil action can be succinctly stated: appellant emphasizes that part of Rule 230.2 which states that a notice of termination "shall be served by mail," and contends that that language mandates that any such notices be sent by United States mail, while appellees argue that the "served by mail" language is modified by the "pursuant to Rule 440" language, and that Rule 440 permits the "mail" requirement to be met by the use of "a mailbox in the prothonotary's office" as provided in the notes to Rule 440.

¶ 9 The trial court accepted appellees' interpretation and held that the testimony of the Chief Deputy of the Office of the Prothonotary that she placed the required notices in appellant's counsel's designated court house mail slot constituted proof of adequate notice. However, following our review of the record and the relevant law, we are compelled to the conclusion that, despite the surface appeal of the interpretation rendered by the trial court, the system employed by the Office of the Prothonotary of Lancaster County, because it lacked a means of verification as to when the notice of intent to terminate was actually served, failed to satisfy the intent of the drafters of Rule 230.2 that a case not be terminated without fair notice to the affected parties.

¶ 10 We commence our examination of this issue by reference to the applicable rules of interpretation and construction, which provide:

The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does

not affect the substantial rights of the parties.

Pa.R.C.P. 126.

Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule.

Pa.R.C.P. 127(b), (c).

... [T]he Supreme Court does not intend a result that is absurd, impossible of execution or unreasonable[.]

Pa.R.C.P. 128(a).

Rules in *pari materia* shall be construed together, if possible, as one rule or one chapter of rules.

Pa.R.C.P. 131.

¶ 11 In the light of these interpretative guides, we turn to an examination of Rule 230.2. First, an examination of the history that preceded the adoption of the Rule [6] makes it clear that the drafters of the Rule, in their otherwise laudable efforts to improve judicial efficiency, did not wish to sacrifice the rights of litigants. *See:* Pa. R.C.P. 230.2, Explanatory Comment–2003. *See also: Shope v. Eagle, supra.* As a result, the drafters attempted to insure that there was a reasonable and verifiable means of advising affected parties of the pending termination of a civil proceeding. Thus, the Rule not only specifies that notice shall be "by mail," but also provides for alternative service by publication "if the mail is returned." Pa.R.C.P. 230.2(b)(2). It is also to be noted that the Rule provides for a routine and automatic means of reinstatement of the action if it is has been wrongfully terminated, as set out in subsection (d)(2), which provides:

If the petition [to reinstate the action] is filed within thirty days after the entry of the order of termination on the docket, the court **shall** grant the petition and reinstate the action.

Pa.R.C.P. 230.2(d)(2) (emphasis supplied).[7]

¶ 12 While Rule 230.2 does refer to Rule 440, it does not merely state that the notice of intent to terminate "shall be served **pursuant to Rule 440**," but contains the additional specific direction that the notice be sent "by mail." Any doubt regarding the importance ascribed by the drafters to the meaning of the "by mail" requirement is resolved by the remaining language of the Rule, as well as by the explanatory comment to the Rule, which details the steps to be taken by the Prothonotary to maximize the effectiveness of the notice of intent to terminate should the "mailed" notice be returned.[8] Finally, it is impor-

---

6. *See:* pp. 5–6, *supra.*

7. Thus, an adversely affected party has a *de facto* thirty-day grace period within which to advise the court that its action is still viable.

8. As set out above, the Rule provides, in relevant part:

If the mailed notice is returned, the notice shall be served by advertising it in the legal publication, if any, designated by the court for the publication of legal notices or in one newspaper of general circulation within the county.

tant to emphasize that the calculation of the critical time periods set forth in the Rule can only be measured by the trial court, and subsequently a reviewing appellate court, when the date the initial notice of intent to terminate was given has been clearly established. For example, subsection (b)(1) of the Rule calls for the notice to be served "sixty days prior to the date of the proposed termination." However, absent a date certain when service was made, there is no way for a reviewing court to know whether the Rule had been complied with. Similarly, given that subsection (d)(2) of the Rule permits an aggrieved party to have a cause of action automatically reinstated if he files a petition within thirty days of the entry of the notice of termination on the docket, the application of this subsection necessitates a means by which the reviewing court can know when an aggrieved party was advised of the notice of termination. Otherwise, an aggrieved party can be unfairly deprived of this opportunity to have the action automatically reinstated. Thus, the necessity for strict compliance with the "by mail" requirement of the Rule cannot be overstated.

¶ 13 In the present case, the "mailbox" procedure employed by the Office of the Prothonotary of Lancaster County was described in a deposition by Chief Deputy Prothonotary Lori Groff, who was responsible for generating and "serving" the notices. The following exchange is particularly relevant:

[APPELLANT'S COUNSEL]: ... [W]hen you send a notice do you send it by mail or do you put it in the attor-

ney[s'] boxes in the prothonotary's office?

[GROFF]: If you have a box, it goes in the attorney's box. [I]f you don't have a box, it's mailed out.

[APPELLANT'S COUNSEL]: Okay. And who physically puts these things in the mail, I mean, the original notices?

[GROFF]: It would be me.

[APPELLANT'S COUNSEL]: Okay. Do you also physically put them in attorney[s']boxes?

[GROFF]: Correct.

[APPELLANT'S COUNSEL]: *Do you keep any kind of written document or record indicating that, in fact, you did put these notices in everyone's boxes and mailed them out?*

[GROFF]: *Just by highlighting the name of the firm or the attorney on the notice that's kept in the file.*

Deposition of Lori Groff, April 12, 2007, p. 11.

[APPELLANT'S COUNSEL]: *Is there a reason why there's not a notation [on the docket regarding a] certificate of service?*

[GROFF]: *There's no reason.*

[APPELLANT'S COUNSEL]: Okay. Why would there not be a reason to include a [certificate of] service of that notice when you do with other documents that are filed with the court?

[GROFF]: Because this docket entry is generated in the program that was written for the termination list. This is automatically put in by the system that the notice was sent.

Pa.R.C.P. 230.2(b)(2). Additionally, the note to subsection (b)(2) provides:
   If the notice mailed to an attorney is returned by the postal service, the prothonotary should check a legal directory or contact the Administrative Office of Penn-

sylvania Courts for a current address. Otherwise, publication in the legal newspaper or a newspaper of general circulation within the county is required under this rule if the mailed notice is returned. *Note* to Pa.R.C.P. 230.2.

\* \* \*

[APPELLANT'S COUNSEL]: Do you have with you or know by any chance how many cases were up for termination in May of 2006?

[GROFF]: There were *around 980 cases.*

\* \* \*

[APPELLANT'S COUNSEL]: Okay. How long does it take you to go through 980 docket entry cases, docket entries?

[GROFF]: About a week.

[APPELLANT'S COUNSEL]: Do you remember reviewing this particular docket by any chance?

[GROFF]: No.

\* \* \*

[APPELLANT'S COUNSEL]: Is there anyone else besides yourself who is responsible for reviewing this gigantic list of cases to be dismissed.

[GROFF]: No.

[APPELLANT'S COUNSEL]: Is there someone else who takes over your other responsibilities while reviewing this list?

[GROFF]: No.

[APPELLANT'S COUNSEL]: Let me get to August, the next entry on the docket, again [Exhibit 1, the notice of intent to terminate] is August 16, 2006, and the entry is terminated by PRC 230.2. You see that?

[GROFF]: Yes.

[APPELLANT'S COUNSEL]: *And you'll notice there too that there's nothing indicating certificate of service of that termination notice; is that correct?*

[GROFF]: *Correct.*

[APPELLANT'S COUNSEL]: Is there a reason again why there's not notice

there of the service of that entry of termination?

[GROFF]: The only reason is is [sic] that is an entry that we set up with the system to put in so we would not have to go into all the cases and manually enter it.

[APPELLANT'S COUNSEL]: Okay. *Is there any way that record you keep at the prothonotary's office or elsewhere that indicates the day that you served that termination notice?*

[GROFF]: *No.*

[APPELLANT'S COUNSEL]: I want to show you what's been marked [Exhibit] 4. What is [Exhibit] 4?

[GROFF]: That is the final notice of termination for one individual case, and the highlighted names are who got copies of this final notice, and that is the original copy that we keep in the file with the highlighted names also to show who we sent.

[APPELLANT'S COUNSEL]: ... *Is there anywhere on that document that indicates the day it was served to the parties that were highlighted there?*

[GROFF]: *No.*

\* \* \*

[APPELLANT'S COUNSEL]: Out of 980 cases roughly—I understand it was a guesstimate—that came up for termination in May [2006], do you have any recollection of how many actually were terminated in August?

[GROFF]: No.

[APPELLANT'S COUNSEL]: If I could ask you to guesstimate again, was it over a hundred?

\* \* \*

[GROFF]: I would say between 7 and 800

[APPELLANT'S COUNSEL]: Okay. And out of that 7[to] 800, have all those notices gone out to the lawyers by now?

[GROFF]: Yes.

[APPELLANT'S COUNSEL]: Do you remember the last date that one went out?

[GROFF]: *I don't recall the last actual day. The last notice went out February of this year, 2007.*

\* \* \*

[APPELLANT'S COUNSEL]: *So it's possible that some people are receiving notices in February saying their case was terminated in August of last year?*

[GROFF]: *Correct.*

[APPELLANT'S COUNSEL]: *Is it possible that [Exhibit 4, the notice that appellant's case had been terminated] was served upon [appellant's counsel] in February 2007?*

[GROFF]: *It's possible.*

[APPELLANT'S COUNSEL]: Is there any record anywhere or notation anywhere that you have that you can point to that the notice of entry of judgment pursuant to [Rule] 230.2 was mailed out to [appellant's counsel] within 30 days of August 16th, 2006?

[GROFF]: *No.*[9]

Deposition of Lori Groff, *supra,* pp. 15–20 (emphasis supplied).

¶ 14 Thus, on this record, it is evident that the system employed by the Office of the Prothonotary of Lancaster County did not include either a means of verifying, or even indicating, the date on which the notices of intent to terminate a cause of action were placed in the court house mail slots, or a means of knowing whether such notices were received. Moreover, the consequence of that omission was exacerbated by the fact that the Prothonotary did not comply with Pa.R.C.P. 236. Given the importance of the issue, namely, the right to proceed with a viable cause of action, and the guidance to interpret the Rules to "secure *the just,* speedy and inexpensive *determination of every action,*" Pa.R.C.P. 126 (emphasis supplied), and to "give effect to *all* of [a Rule's] provisions," Pa.R.C.P. 127(b) (emphasis supplied), we are compelled to the conclusion that the failure of the Prothonotary to serve the notice of intent to terminate appellant's action "by mail" constituted error. Therefore, we must reverse the decision of the trial court, and direct that court to reinstate appellant's cause of action.

¶ 15 Order reversed.[10] Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 16 CLELAND, J., FILES A CONCURRING OPINION.

CONCURRING OPINION BY CLELAND, J.:

¶ 1 I agree with the Majority's reversal of the trial court order denying reinstatement of Appellant's case. The Majority has made a thoughtful analysis of the applicable rules, nevertheless I disagree with the Majority's reading of the mailing requirements of Pa.R.C.P. 440. Therefore, I concur in the result and write separately.

9. Pa.R.C.P. 236(b) specifically provides that "[t]he prothonotary shall note in the docket the giving of the notice" of the entry of judgment. However, as noted in footnote 5, *supra,* the docket reveals no Rule 236 entry on the docket.

10. In light of our decision upon the first question raised on appeal, we need not address the further issue of whether there was sufficient activity not reflected on the docket to preclude termination.

¶ 2 The provisions of Pa.R.C.P. 230.2(b)(2) require that a notice of proposed termination of a case for inactivity "shall be served by mail pursuant to Rule 440." To comply with Rule 440, service of legal papers other than original process shall be made:

(i) by handing or mailing a copy to or leaving a copy for each party at the address of the party's attorney of record endorsed on an appearance or prior pleading of the party, or at such other address as a party may agree, or

(ii) by transmitting a copy by facsimile to the party's attorney of record as provided by subdivision (d).

Pa.R.C.P. 440(a)(1). The note following subsection (i) provides "[s]uch other address as a party may agree might include a mailbox in the prothonotary's office or an e-mail address." Nowhere in Rule 440 is there a mandate that service by mail be effected solely through mail deposited with the United States Postal System, as illustrated by the options afforded for "mailing" by delivery to a courthouse mailbox or an e-mail address or by facsimile transmission.

¶ 3 I believe the notice of proposed termination for inactivity delivered to Appellant's counsel's courthouse mailbox satisfies the requirements of Rule 230.2 and Rule 440, especially in light of counsel's express authorization to the prothonotary to serve court notices and orders through his courthouse mailbox.

¶ 4 However, Rule 230.2 governs more than the giving of notice of proposed termination. Rule 230.2 also provides the mechanism for entering the order terminating the case with prejudice for failure to prosecute. Pa.R.C.P. 230.2(c). Notice of entry of the order must be given in accordance with Pa.R.C.P. 236 with a notation on the docket reflecting the notice was given. Here, the docket does not reflect "the giving of notice" itself, as mandated by Rule 236(b). Therefore, I concur in the result to reverse the order of the trial court and remand for further proceedings